**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SETH KUCHLER, individually, and on behalf of those similarly situated** | * | **CIVIL ACTION NO. 25-cv-2064** |
| ***Plaintiffs,*** | * | **JUDGE NANNETTE JOLIVETTE BROWN** |
| **vs.** | * | **MAG. JUDGE MICHAEL NORTH** |
| **JOE LEE, in his official capacity as Mayor of Pearl River; JACK SESSIONS, in his official capacity as Chief of Police of Pearl River; and TOWN OF PEARL RIVER** | * | **COLLECTIVE ACTION 29 U.S.C. 216(b)** |
| ***Defendants*.** | * | |
| * * * * * * * * * * * * * * * * * * * * | * | |

## FIRST AMENDED COMPLAINT

NOW INTO COURT comes Plaintiff, Seth Kuchler, a person of full age of majority domiciled in the Eastern District of Louisiana, on his own behalf and on behalf of those similarly situated, who files this First Amended Complaint, as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) to clarify collective class allegations and allege as follows:

### I. Parties

1. Plaintiff Seth Kuchler is a resident of the Eastern District of Louisiana and a former employee of Defendants.

2. Made Defendant herein, Mayor of Pearl River, Joe Lee, in his official capacity as Mayor of Pearl River, is a person of the full age of majority and resident in the Eastern District of Louisiana, who is the current duly elected Mayor of Pearl River.

3. Made Defendant herein, Pearl River Chief of Police, Jack Sessions, in his official capacity as Chief of Police of the Pearl River Police Department, is a person of the full age of majority and resident in the Eastern District of Louisiana, who is the current duly elected Chief of Police of Pearl River.

4. Made Defendant herein, Town of Pearl River, ("Pearl River") is a municipality in the Eastern District of Louisiana.

## II. JURISDICTION AND VENUE

5. This action alleges the violation of rights under the Fair Labor Standards Act (hereafter "FLSA"). Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C. §1331. Furthermore, there exist additional state causes of action that arise out of the same transaction or occurrence as the underlying federal cause of action, and this Court has ancillary jurisdiction over these counts pursuant to 28 U.S.C. §1367.

6. The Court has personal jurisdiction over Defendants because the events or omissions giving rise to the instant lawsuit all occurred within this judicial district. Venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b)(2).

## III. FACTUAL BACKGROUND

7. Plaintiff Kuchler began employment as a patrol officer with Pearl River Police Department on October 2, 2023. Mr. Kuchler worked with Pearl River Police Department until his termination on or about July 15, 2024.

8. Mr. Kuchler was paid on an hourly basis at the rate of $19.50 per hour based on a 40 hour work week.

9. When Mr. Kuchler worked in excess of 40 hours per week, instead of receiving proper overtime compensation, he was compensated under the designation of "miscellaneous pay."

10. This "miscellaneous" pay was compensated at Mr. Kuchler's regular hourly rate of $19.50, rather than the legally required overtime rate of $29.25.

11. Mr. Kuchler spoke to other patrol officers employed by the Pearl River Police Department who confirmed Mr. Kuchler's pay scheme was applied to all patrol officers employed in the Pearl River Police Department.

12. Mr. Kuchler has around 78.5 hours of overtime pay that was improperly compensated under the "miscellaneous" pay label.

13. In December of 2023, Mr. Kuchler noticed the discrepancy in his overtime wages and brought this issue to the attention of Lieutenant Mike Alquist. Lieutenant Alquist advised Mr. Kuchler to speak to Michele McDonald, the executive assistant, and the next day an email was sent regarding his concerns about the FLSA violations.

14. In response to Mr. Kuchler's inquiry regarding his earned and unpaid overtime pay, Major Francisco Dean and Michele McDonald warned Mr. Kuchler that he should be careful who he speaks to in the future about those concerns.

15. Despite the warnings Kuchler continued voicing of his pay concerns, and soon noticed a retaliatory shift in the working environment. Mr. Kuchler began being heavily scrutinized and reprimanded when he rebuked orders to make unconstitutional or meritless arrests.

16. Specifically, Mr. Kuchler continued having conversations with Lieutenant Alquist for months, at least until around or about February or March of 2024, repeatedly discussing payment of overtime.

17. The frequency of Mr. Kuchler's own complaints decreased when Major Dean sent an email, around February or March of 2024, to patrol officers stating that the overtime/miscellaneous pay issue would be corrected in May of 2024.

18. With no correction being made as promised, Mr. Kuchler continued complaining about the overtime/miscellaneous pay issue to Lieutenant Alquist, specifically asking why it would take so long to resolve the issue.

19. Further, after receiving the email regarding overtime pay from Major Dean, patrol officers immediately began more intensive training as compared to just before the email. As a result, Plaintiff and other patrol officers worked more overtime hours during this period, but their pay was still misclassified as "miscellaneous."

20. In the springtime of 2024, the Pearl River Police Department was also having issues with POST pay. Many patrol officers, along with Kuchler, voiced concerns about their pay due to this issue.

21. Because Mr. Kuchler had voiced his concerns about overtime pay to the police administration before, and he was perceived to already have a target on his back, Mr. Kuchler's coworkers discussed the idea that Kuchler join them in carrying the concerns regarding POST pay up the chain.

22. Around that same time, Mr. Kuchler's coworkers went to discuss their pay concerns regarding POST pay with Major Dean. During this conversation, Major Dean referred to Mr. Kuchler as a "ring leader;" subsequently, two of Mr. Kuchler's coworkers were questioned by Major Dean about Mr. Kuchler's role in organizing the POST pay meeting.

23. Eventually, Mr. Kuchler was told by one of his rank-superiors that rumors were swirling in the department, specifically that Mr. Kuchler had told individuals, who were pulled over in a routine traffic stop, to sue the Pearl River Police Department.

24. Sometime in about late February to early March, Mr. Kuchler was called, over the phone, by Major Dean, who asked Mr. Kuchler to meet him outside in front of the department

while Mr. Kuchler was on his shift. Major Dean discussed the rumors with Mr. Kuchler. Mr. Kuchler explained himself and stated he was not a "ring leader" of the POST pay meeting. Major Dean ended the discussion by stating that if Mr. Kuchler could only go back to how he was, before complaining about FLSA, then he would be able to reap the rewards of "the plans" that Major Dean had for him.

25. On March 15, 2024 Mr. Kuchler responded to a dog bite incident. Mr. Kuchler investigated the scene and spoke with the dog bite victim and the dog owner. The victim received bites on various locations of her body which caused serious bodily injury. Mr. Kuchler asked the dog owner whether the dog had previously bitten another person before; the dog owner responded that his dog had bit someone before, but on the premises of his property.

26. On March 26, 2024, Officer Sparrow of the St. Tammany Parish Department of Animal Services advised Mr. Kuchler that the dog would have to be deemed dangerous.

27. On March 28, 2024, Mr. Kuchler was asked to issue a summons against the dog owner for a violation of Pearl River ordinance chapter 11 section 11-36 (regarding dangerous dogs). After Mr. Kuchler investigated the matter, he rebuked the initial request to issue a summons, as he did not believe this summons had merit because there was never a prior determination that the dog in question was a dangerous animal prior to the March 15th incident. Due to this grey area and potential lack of merit for an arrest, Mr. Kuchler communicated his investigative and lawful concerns to Sergeant Alquist. Alquist then advised Kuchler that he spoke to the Town Attorney in regards to the incident and that the summons was proper.

28. On March 29, 2024, Mr. Kuchler then spoke to Major Dean to address his concerns regarding the arrest. During the conversation Mr. Kuchler received a dispatch due a dog on the loose, he spoke again to the victim in the March 15th incident. Major Dean arrived on the scene

after Mr. Kuchler, Major Dean asked the victim if she would write a handwritten statement describing the dog attack incident. The victim's handwritten statement conflicted with the oral statement given to Mr. Kuchler on March 15, 2024.

29. The dog owner from the March 15th incident came upon the scene at a later point in time and was asked whether his dog was the one on the loose, the owner stated that his dogs were in his residence. Mr. Kuchler asked whether St. Tammany Parish Department of Animal Services told the dog owner that his dog was deemed dangerous; at this point in time the owner was not informed of such. Mr. Kuchler then asked whether the dog owner had put a tag for his dog's rabies shot on his dog, which the dog owner said he had not. After this Mr. Kuchler informed the dog owner that this violated the Pearl River criminal code and read the dog owner's *Miranda* rights and advised him that he was under arrest.

30. On or around June 19, 2024, three and a half weeks before Mr. Kuchler was terminated, there was an SRT training with about seven or eight other people present.

31. At the SRT training, Major Dean asked the participants if there was anything they wanted to get off their chest. In response, Mr. Kuchler stated he was tired of people spreading rumors and tarnishing his reputation.

32. In response, Major Dean stated that Mr. Kuchler made himself vulnerable to rumors by voicing his complaints and opinion, and, if he wanted to avoid rumors, that he should not speak openly about his concerns and complaints.

33. On July 5, 2024, as a result of his continued complaints regarding pay issues Mr. Kuchler was given a poor evaluation.

34. Defendants' alleged reasoning for Mr. Kuchler receiving a poor evaluation was related to his professionalism due to his belief that he was making a meritless arrest and inquiring further with his superiors.

35. In addition, Mr. Kuchler was also evaluated poorly for his work habits because he was allegedly "gossiping and rumor-spreading" due to his concerns about him and those similarly situated being systematically undercompensated for overtime pay. In fact, this was the true cause for Defendants' adverse employment actions.

36. Subsequently, Mr. Kuchler was terminated in retaliation a week and a half later, on or about July 15, 2024.

## CLAIMS

### COUNT 1: VIOLATION OF THE FLSA

37. Plaintiff hereby re-alleges and reincorporates all paragraphs set forth above.

38. At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. At all times hereinafter mentioned, Defendants have been a covered "public agency" employer "enterprise engaged in commerce or in the production of goods for commerce" pursuant to 29 U.S.C. 203(s)(1)(c).

40. The FLSA requires that employers pay employees at a rate not less than one and one-half time the regular rate at which she is employed for all hours worked beyond forty hours in a workweek. 29 U.S.C. § 207.

41. Plaintiff and all Putative Class members were hired by Defendants at an hourly rate of pay.

42. Defendants directed the means and manner in which Plaintiff was compensated.

43. During the relevant time period, Defendants have violated, and are violating, the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees covered under the FLSA for workweeks longer than 40 hours without compensating such employees minimum wages and/or for their employment in excess of 40 hours per week at rates no less than one and one-half the regular rates for which they were employed.

44. Defendants operate with a purposeful and intentional practice of refusing to pay overtime wages at 1.5 the regular rate of employees' pay as a policy and/or practice.

45. Instead, Defendants reduced the rate of "overtime" pay by classifying portions of Plaintiff's pay, and those similarly situated, as "miscellaneous" which Defendants did to justify only paying Plaintiff a straight wage, rather than due and earned overtime pay.

46. Defendants' nonpayment of overtime to its employees was and is knowing, willful, reckless, and not based in a good faith belief that their conduct was in accordance with the law.

47. Plaintiff and all Putative Class members do not fall within any exemption of the FLSA and were required to be paid according to the dictates of that section.

48. Even if Plaintiff and all Putative Class members are partially exempt employees Defendants systematically refused to pay due overtime wages by classifying non-exempt overtime hours as "miscellaneous pay."

49. Accordingly, Plaintiffs and all those who are similarly situated are entitled to wages under the FLSA in an amount equal to one and one-half times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COUNT 2: FLSA RETALIATION UNDER 29 U.S.C. 215(A)(3) AS TO MR. KUCHLER**

50. Plaintiffs hereby re-allege and reincorporate all paragraphs set forth above.

51. Defendants had a policy of retaliation and punishment in direct violation of 29 USC

215(a)(3) for those who complained of and attempted to hold Defendants accountable for Defendants' FLSA violations.

52. It is a violation of the FLSA for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…" *Fact Sheet # 73* (quotations omitted); 29 USC 215(a)(3). "Employees are protected regardless of whether the complaint is made orally or in writing." *Id*.

53. In December of 2023 Mr. Kuchler voiced his concerns of overtime pay discrepancy to Lieutenant Mike Alquist, who then referred him to Michelle McDonald, an executive assistant.

54. After Michelle McDonald sent an email regarding Mr. Kuchler's concerns about potential FLSA violations, Major Dean told Mr. Kuchler that he should "be careful" about who he speaks to in the future regarding concerns about his pay.

55. Subsequently, Mr. Kuchler experienced a shift in his work environment. As a result of his FLSA complaints he was heavily scrutinized and was reprimanded for refusing to make arrests that had no legal merit.

56. As a result of his FLSA complaints he was heavily reprimanded, scrutinized, and eventually terminated just a week and a half following his very next evaluation after the FLSA complaints.

57. Defendants are liable to Mr. Kuchler for damages, costs, and fees associated with his retaliatory discharge.

**COLLECTIVE ACTION ALLEGATIONS AND DEFINED CLASS**
**29 U.S.C. § 216(b)**

58. Plaintiff hereby re-alleges and reincorporates all paragraphs set forth above.

59. Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and formerly similarly situated patrol officers employed by the Pearl River Police Department who performed any work for either Defendant Pearl River, or Defendant Jack Sessions within three years prior to the date of filing this lawsuit, and who were not paid overtime wages for hours worked over forty in a workweek.

60. Defendants operate with a purposeful common practice, policy, or plan to deny their employees their lawfully earned wages.

61. Plaintiff requests that, at the soonest practicable time, the Court order that notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

**COUNT 3: VIOLATION OF THE LOUISIANA WAGE PAYMENT ACT**
**(LA. REV. STAT. §§ 23:631-632)**

62. Plaintiff hereby re-alleges and reincorporates all paragraphs set forth above.

63. Defendants failed to pay Mr. Kuchler all earned and owed wages on or before the next regular payday, or no later than fifteen days, following the date of discharge.

64. Mr. Kuchler has made amicable demands of payment of the wages they earned while employed, but was never paid his owed wages. Mr. Kuchler demanded his earned and unpaid wages reflected above on June 27, 2025 from Defendants, but has still not received the money owed to him.

65. Defendants' refusal to pay earned and owed wages to Plaintiff after discharge, especially after amicable demand, is a separate and distinct violation of the Louisiana Wage Payment Act. See La. R.S. 23:632.

66. Defendants' actions violate the Louisiana Wage Payment Act. Plaintiff is entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

67. Plaintiff respectfully requests a trial by jury.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

a. That this case be allowed to proceed as a collective action;

b. That this Court authorize notice to be sent to all Putative Class Members as defined;

c. For an award of all unpaid wages and overtime;

d. For an award of liquidated damages, costs, and attorney fees pursuant to 29 U.S.C. § 216(b);

e. For an award of statutory penalties, costs, and attorney fees pursuant to LWPA in refusing to pay final wages to former employees;

f. All compensatory and punitive damages as called for in the FLSA;

g. For damages, costs, fees, and penalties for violations of 29 USC 215(a)(3);

h. For injunctive or equitable relief as provided by law;

i. For pre and post-judgment interest to the extent provided by law; and

j. For such other and further relief as may be just and proper.

Respectfully Submitted:

/s/ Kenneth C. Bordes

**Kenneth C. Bordes (Bar #35668)**
**Abigail Floresca (Bar #41248)**
KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
3914 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on Plaintiff via the Court's ECF system, which provides electronic service to all counsel of record, this 2nd day of December, 2025.

________/s/ Kenneth C. Bordes_______
Kenneth C. Bordes